UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARILYN TAYLOR (On her own behalf and on behalf of her Minor Children, M.M., N.M., and D.M.); and DEHAVEN MCCLAIN, SR.;

                             Plaintiffs,

-v-

THE CITY OF NEW YORK; New York Police Department ("NYPD") Officer ("P.O.") MARIPILY CLASE (Shield No. 30454); P.O. SURANJIT DEY (Shield No. 15522); and P.O. JERMAINE HODGE (Shield No. 933851); In their individual capacities;

                             Defendants.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Index No. **CV13- 1668**

ECF CASE

WEINSTEIN, J

AZRACK, M.J.

---

This action arises out of the excessive force used by New York City Police Department ("NYPD") officers when they needlessly and without warning pepper-sprayed a mother, father and their three small children in a New York City subway station incident to a stop. The aggressiveness of the officers' demeanors had upset the four year-old daughter, and her mother bent down to console her and tell her, "everything will be ok," defendant SURANJIT DEY reacted by pepper-spraying not only mother and father but also all three children - aged four years old, two years old and *five months* old. The pepper-spray caused the children to scream out, and choked the two year-old who went into fits of vomiting. After the attack, mother and father suffered ongoing eye injuries and all three children suffer emotional harms, and are now afraid to ride the subways and become afraid when they see police officers. The four year-old cried herself to sleep for weeks, and after the incident the two year-old began waking up in the night crying for her mother.

As and for their complaint, plaintiffs DEHAVEN MCCLAIN, Sr. and MARILYN TAYLOR (on her own behalf and on behalf of her minor children, M.M., N.M., and D.M.), by their attorneys DAVID B. RANKIN and JANE L. MOISAN of the Law Office of Rankin and Taylor, do hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiffs' rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, as amended, codified as 42 U.S.C. § 1983; and pendant claims under the Constitution of the State of New York, Article I, § 12, and the laws of the State of New York.

2. Plaintiffs MARILYN TAYLOR's ("Ms. TAYLOR"), DEHAVEN MCCLAIN, Sr.'s ("Mr. MCCLAIN") and their Minor Children's rights were violated when members of the NYPD used excessive force against them, including the unreasonable use of pepper-spray.

3. Ms. TAYLOR and Mr. MCCLAIN's rights were violated when the NYPD officers pepper-sprayed and injured their Minor Children.

4. Plaintiffs seek an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343 (a) (3-4).

6. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth and Fourteenth Amendments of the Constitution of the United States.

7. Pursuant to New York State General Municipal Law § 50-E, Ms. TAYLOR and her Minor Children filed timely Notice of Claims with the New York City Comptroller on or about August 29, 2012. Ms. TAYLOR's and the Minor Children's claims were not adjusted by the

New York City Comptroller's Office within the period of time provided by statute. This Court has supplemental jurisdiction over their state claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper pursuant to 28 U.S.C. §1391(b) in that plaintiffs' claims arose in the Eastern District of New York.

9. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

10. Plaintiff M.M. is an infant, born on September 4, 2008; plaintiff N.M. is an infant born on July 24, 2010; and plaintiff D.M. is an infant born on May 3, 2012 (collectively referred to as the "Minor Children").

11. Ms. TAYLOR and the Minor Children reside together, and at all times relevant to this action were residents of Bronx County in the State of New York.

12. At all times relevant to this action, Mr. MCCLAIN was a resident of New York County, New York

13. Ms. TAYLOR is the parent and natural guardian of the Minor Children and brings claims both on her own behalf and on behalf of the Minor Children.

14. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a

police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

15. Defendants NYPD Officers ("P.O.") MARIPILY CLASE ("CLASE") (Shield No. 30454), P.O. SURANJIT DEY ("DEY") (Shield No. 15522), and P.O. JERMAINE HODGE ("HODGE") (Shield No. 933851), collectively referred to as the "officer defendants," were at all times relevant herein officers, employees and agents of the NYPD. At all times relevant to this action, the officer defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

16. The officer defendants are being sued in their individual capacities.

17. All of said defendants are employees or agents of the NYPD. Accordingly, said defendants are entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice that (a) plaintiffs intend to name said officers as defendants in an amended pleading once the true names and shield numbers of said defendants become known to plaintiffs; and (b) the Law Department should immediately begin preparing their defense in this action.

18. Defendants' acts herein complained of were carried out intentionally, recklessly, with malice and gross disregard for plaintiffs' rights.

## STATEMENT OF FACTS

19. The incident alleged herein occurred principally on August 9, 2012 at approximately 12:00 p.m. and thereafter in the vicinity of the Manhattan-bound platform of the Atlantic Avenue Metropolitan Transit Authority ("MTA") L train station.

20. At the time and location described in paragraph 16, *supra*, Ms. TAYLOR and Mr. McCLAIN were readying to board a Manhattan-bound L train with their three young children - D.M., five months old, whom Mr. MCCLAIN was carrying wrapped his chest; N.M., two years old, who was being pushed by Ms. TAYLOR in her stroller; and M.M., four years old, who was holding her mother's hand.

21. The officer defendants engaged and stopped plaintiffs and demanded to see Ms. TAYLOR's identification for the reason that, upon information and belief, the officer defendants suspected Ms. TAYLOR had failed to pay the subway fare because she had gone through the service entry with her baby stroller rather than passing through the turnstile.

22. During this stop, the aggressive language and demeanor of the officer defendants caused the Minor Children to become scared and upset.

23. Ms. TAYLOR responded to her four year old daughter's question as to whether she was going to be okay by leaning over to tell her daughter that, "everything is going to be okay."

24. At this point, defendant DEY unloaded pepper-spray into Ms. TAYLOR's face.

25. The spray caused Ms. TAYLOR to reel backwards, nearly falling off the platform, and to fall to her knees, blinded and in pain.

26. The pepper-spray struck Mr. MCCLAIN as well, resulting in pain and discoloration of his left eye.

27. The Minor Children were also struck by the pepper-spray, causing them to scream and cry in fear and pain, and sending two year old N.M. into fits of vomiting.

28. Ms. TAYLOR was then placed in handcuffs as the Minor Children cried in fear and pain.

29. Defendants HODGE and DEY pushed Ms. TAYLOR down the stairwell in an unreasonably forceful manner that caused bruising to Ms. TAYLOR's wrists and lower back.

30. Mr. MCCLAIN was left to try to get the Minor Children, screaming and crying, safely home by himself.

31. Ms. TAYLOR was transported to NYPD Transit 33 station before being taken to Central Booking.

32. On August 10, 2012, Ms. TAYLOR was arraigned under Docket Number 2012KN066131 and the case was adjourned in consideration of dismissal.

33. Due to the excessive deployment of pepper-spray, both Ms. TAYLOR, Mr. MCCLAIN and the Minor Children suffered ongoing injury to their eyes for which they have had to seek subsequent medical treatment.

34. Since the incident, plaintiffs have suffered repeated harassment from the officer defendants, forcing them to avoid using the MTA through the Atlantic Avenue stop.

35. As a result of this incident, plaintiffs suffered physical, psychological, economic and emotional injuries, including impeding their inability to seek assistance from law enforcement personnel or to avail themselves of public transportation.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
(All Plaintiffs Against All Defendants)

36. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

37. Defendants, under color of state law, subjected plaintiffs to the foregoing acts and omissions, thereby depriving plaintiff of their rights, privileges and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of her person, including the excessive use of force; and (b) freedom from deprivation of liberty without due process of law.

38. Defendants' deprivation of plaintiffs' constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## FAILURE TO INTERVENE – FOURTH AMENDMENT – 42 U.S.C. § 1983
### (All Plaintiffs Against the Officer Defendants Only)

39. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

40. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the NYPD or other law enforcement agency employing unjustified and excessive force against a civilian.

41. The officer defendants were present for the above-described incident and witnessed other defendants use excessive force plaintiffs, including the unreasonable and unjustified use of pepper spray by defendant DEY and the bruising caused by defendants DEY and HODGE in shoving Ms. TAYLOR down the stairwell.

42. The officer defendants' use of force against plaintiffs was obviously excessive and unjustified under the circumstances yet the officer defendants failed to take any action or

make any effort to intervene, halt or protect plaintiffs from being subjected to excessive force by other officer defendants.

43. The officer defendants' violations of plaintiffs' constitutional rights by failing to intervene in other defendants' clearly unconstitutional use of force resulted in the injuries and damages set forth above.

## THIRD CLAIM
### *MONELL* CLAIM UNDER – 42 U.S.C. § 1983
**(All Plaintiffs Against Defendant CITY Only)**

44. Plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

45. All of the acts and omissions by the officer defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

46. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the officer defendants' wrongful acts and acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

47. The acts complained of were carried out by the aforementioned officer defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

48. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the following unconstitutional practices:

  a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

  b. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers;

  c. Retaliating against officers who report police misconduct; and

  d. Failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented by a supervisor or other agent or employee of the NYPD.

49. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY and analogous prosecutions of police officers:

  a. Zabala v. City of New York, Index No. 3771/2010 (Sup. Ct., Kings Co.) (police officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered);

  b. Ashe v. City of New York, 09-CV-9696 (GBD) (THK) (S.D.N.Y. 2010) (police officers beat and use pepper spray upon arrestees even though they were both already handcuffed and compliant);

  c. Mckie v. City of New York, 12-CV-2070 (JG) (VVP) (E.D.N.Y. 2010) (Police harassed, falsely arrested, maced, and injured a young man, and charged him with blocking traffic while he stood waiting for a train at Broadway Junction; taken to Transit District 33);

  d. Moise v. City of New York, 09-CV-9855 (DC) (JLC) (S.D.N.Y. 2010) (police officers beat and use pepper-spray upon a compliant arrestee while he was already in handcuffs);

  e. Long v. City of New York, 09-CV-6099 (AKH) (S.D.N.Y. 2009); People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.) (officer was prosecuted for recklessly using physical force);

  f. Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y. 2008) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

  g. Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y. 2006) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

  h. McMillan v. City of New York, 04-CV-3990 (FB) (RML) (E.D.N.Y. 2006) (officers fabricated evidence and used excessive force against an African-American man in

      Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

i. Richardson v. City of New York, 02-CV-3651 (JG) (CLP) (E.D.N.Y. 2006) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

j. Barry v. New York City Police Department, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y. 2005) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

k. Nonnemann v. City of New York, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y. 2005) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youth);

l. Dotson v. City of New York, 03-CV-2136 (RMB) (S.D.N.Y. 2003) (officers arrest and use excessive force against a candidate for City Council for trespassing in his own residential building);

m. Taylor v. City of New York, 01-CV-5750 (ILG) (MDG) (E.D.N.Y. 2003) (same as Richardson, except without the excessive force; judge at the criminal trial acquitting Mr. Taylor noted, on the record, that he had "significant doubt" about the truthfulness of the officers who testified);

n. Walton v. Safir, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

o. White-Ruiz v. City of New York, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

p. Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y. 1996) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department);

q. Kaufman v. City of New York, 87-CV-4492 (RO), 1992 U.S. Dist. LEXIS 14049 (S.D.N.Y. 1996) (bystander arrested for observing an unlawful arrest in public,

requesting the officer's badge number, and telling the officer that he planned to file a report about the arrest).

r. Sorlucco v. New York City Police Department, 89-CV-7225 (CCH), 888 F.2d 4 (2d Cir. 1989) (former officer entitled to trial on issue of whether she was re-assigned and then terminated after reporting that a fellow officer had raped her); and

50. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct**, are further evidenced, inter alia, by the following:

   a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

   > In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[1]

   b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

   c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread... custom or policy by the city approving illegal conduct" such as lying

---

[1] Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

11

under oath and false swearing, Commissioner Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[2]

    d. Regarding defendant CITY's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a city agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[3] When it does, however, Police Commissioner Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one-quarter of officers whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[4] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[5]

51. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct**, are further evidenced, inter alia, by the following:

---

[2] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, available at http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[3] In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). See, CCRB Jan.-Dec. 2007 Status Report at p. 19, available at http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

[4] Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[5] Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

    a. Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

    b. In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

    c. Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

52. The existence of the above-described unlawful <u>de facto</u> policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and the defendant CITY, including, without limitation, Commissioner Kelly.

53. The actions of the individual police defendants resulted from and were taken pursuant to the above-mentioned <u>de facto</u> policies and/or well-settled and widespread customs and practices of the defendant CITY, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, <u>inter alia</u>, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in

order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

54. All of the foregoing acts by defendants deprived plaintiffs of federally protected rights enumerated above.

55. Defendant CITY knew or should have known that the acts alleged herein would deprive plaintiffs of their rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

56. Defendant CITY is directly liable and responsible for the acts of the officer defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City of New York and NYPD, and to require compliance with the Constitution and laws of the United States.

57. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the defendant CITY have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

58. The aforementioned policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police

misconduct detailed herein. Specifically, pursuant to the aforementioned policies, practices and/or customs, the officer defendants felt empowered to exercise unreasonable and wholly unprovoked force against plaintiffs. Pursuant to the aforementioned policies, practices and/or customs, officer defendants failed to intervene in or report other defendants' violation of plaintiff's rights.

59. Plaintiffs' injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

60. The actions of the officer defendants of employing wholly unprovoked and excessive force resulted from and were implemented pursuant to the foregoing de facto policies and/or well-settled and widespread customs and practices of the defendant CITY and were directly responsible for the violation of the plaintiffs' constitutional rights.

### FOURTH CLAIM
### VIOLATIONS OF THE CONSTITUTION OF THE STATE OF NEW YORK
### (Ms. TAYLOR, On Her Own Behalf and On Behalf of the Minor Children, Against All Defendants)

61. Ms. TAYLOR and the Minor Children incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

62. The conduct of the officer defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

63. Defendants' conduct alleged herein breached the rights and protections guaranteed to plaintiff and the Minor Children by the New York State Constitution, Article I, § 12, including security against unreasonable seizures and interceptions.

64. Defendants' deprivation of Ms. TAYLOR and the Minor Children's rights under the New York State Constitution resulted in the injuries and damages set forth above.

**FIFTH CLAIM
ASSAULT AND BATTERY
UNDER THE LAWS OF THE STATE OF NEW YORK
(Ms. TAYLOR, On Her Own Behalf and On Behalf of the Minor Children,
Against All Defendants)**

65. Ms. TAYLOR and the Minor Children incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

66. By the actions described above, the officer defendants did inflict assault and battery upon plaintiffs Ms. TAYLOR and the Minor Children. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

67. The conduct of the officer defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

68. As a result of the foregoing, Ms. TAYLOR and the Minor Children were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER THE LAWS OF THE STATE OF NEW YORK
(Ms. TAYLOR, On Her Own Behalf and On Behalf of the Minor Children, Against All Defendants)

69. Ms. TAYLOR and the Minor Children incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

70. By the actions described above, the officer defendants engaged in extreme and outrageous conduct, causing plaintiffs to fear for each other's safety and to suffer anxiety in the presence or potential presence of the police, and intentionally and/or negligently causing severe emotional distress.

71. Defendants owed plaintiffs a duty of care to exercise reasonable caution and proportionality in the use of force.

72. The acts and conduct of the officer defendants were the direct and proximate cause of injury and damage to plaintiff Ms. TAYLOR and her Minor Children and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

73. The conduct of the officer defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

74. As a result of the foregoing, Ms. TAYLOR and the Minor Children were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM
## NEGLIGENCE
## UNDER THE LAWS OF THE STATE OF NEW YORK
### (Ms. TAYLOR, On Her Own Behalf and On Behalf of the Minor Children, Against All Defendants)

75. Ms. TAYLOR and the Minor Children incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

76. Defendants owed plaintiffs a duty of care to exercise reasonable caution and proportionality in the use of force.

77. The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to Ms. TAYLOR and the Minor Children. The acts and conduct of the individual defendants were the direct and proximate cause of injury and damage to Ms. TAYLOR and the Minor Children, and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

78. The conduct of the officer defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to Ms. TAYLOR pursuant to the state common law doctrine of respondeat superior.

79. As a result of the foregoing, Ms. TAYLOR and the Minor Children were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM
## NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION, AND TRAINING
## UNDER THE LAWS OF THE STATE OF NEW YORK
### (Ms. TAYLOR, On Her Own Behalf and On Behalf of the Minor Children, Against Defendant City)

80. Ms. TAYLOR and the Minor Children incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

81. Defendant CITY negligently hired, screened, retained, supervised, and trained the officer defendants. The acts and conduct of the officer defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

82. As a result of the foregoing, Ms. TAYLOR and the Minor Children were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## JURY DEMAND

83. Plaintiffs demand a trial by jury in this action on each and every one of their damage claims.

WHEREFORE, plaintiffs demand judgment against defendant CITY and the officer defendants individually and jointly and prays for relief as follows:

   a. That they be compensated for violation of their constitutional rights, pain, suffering, mental anguish, and humiliation; and

   b. That they be awarded punitive damages against the officer defendants; and

   c. That they be compensated for attorneys' fees and the costs and disbursements of this action; and

   d. For such other further and different relief as to the Court may seem just and proper.

Dated: New York, NY
        March 27, 2013

                                  Respectfully submitted,

By: _____
     David B. Rankin
     Jane L. Moisan
     Rankin & Taylor, PLLC
     *Attorneys for the Plaintiff*
     11 Park Place, Ste. 914
     New York, NY 10007
     t: 212-226-4507